IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Webster D. Williams, III,<br><br>                Plaintiff,<br><br>vs.<br><br>Dillon County, Lieutenant Pam,<br>Sammy Samuels, Brandie Barfield,<br>Officer Tosha, Officer Best,<br>Officer Cooper, Officer Wendy,<br>Officer Crystal, Sergeant McQueen,<br>Officer Hodges, Terry McArthur,<br>Ms Greer, Ms Barfield, Officer<br>Godboldt, Officer Abraham,<br>Various other employees of Dillon<br>County, John Doe, and Richard Roe,<br><br>                Defendants. | Civil Action No. 6:16-1236-RMG-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendants' motion for summary judgment (doc. 38) and the plaintiff's motion for summary judgment (doc. 69). The plaintiff, a federal prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. At the time of the allegations in his complaint, the plaintiff was a pretrial detainee.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under Section 1983 and submit findings and recommendations to the District Court.

**PROCEDURAL HISTORY**

The plaintiff filed his complaint on April 20, 2016 (doc. 1 at 2-4). On October 3, 2016, the defendants filed a motion for summary judgment (doc. 38). On October 4,

2016, by order of this court filed pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment and dismissal procedure and the possible consequences if he failed to respond adequately to the defendants' motion. On October 26, 2016, the plaintiff filed a response in opposition (doc. 48). On November 7, 2016, the defendants filed a reply (doc. 51). On December 22, 2016, the plaintiff filed a motion for summary judgment (doc. 69). On January 4, 2017, the defendants filed a response (doc. 71), and on January 19, 2017, the plaintiff filed a reply (doc. 73).

In his complaint, the plaintiff alleges the defendants were deliberately indifferent to his serious medical needs by failing to provide him with his prescribed medication. He further alleges that the defendants retaliated against him for complaining about not receiving his prescription medications by placing him in solitary confinement (doc. 1 at 2-4).

## **FACTS PRESENTED**

The plaintiff was a detainee at the Dillon County Detention Center ("DCDC") from December 18, 2012, until February 15, 2015,[1] while he was awaiting trial on federal criminal charges (doc. 69-3, pl. dec. ¶ 2). DCDC is operated and staffed by the Dillon County Sheriff's Office ("DCSO") (doc. 38-4, Hulon aff. ¶ 6). The DCDC was responsible for rendering medical care, either through onsite nursing services or transporting the plaintiff to an offsite doctor who contracted with the DCDC, to the plaintiff from his intake until July 15, 2014. On or about July 15, 2014, the DCDC entered into an agreement with Southern Health Partners ("SHP") to provide medical services to detainees at the DCDC. As such, SHP and its employees were responsible for rendering medical care to the plaintiff from July 15, 2014, until the plaintiff's transfer out of the DCDC (doc. 38-2, Barfield aff. ¶ 9).

---

[1] The defendants state in their motion that the plaintiff was in the DCDC from December 19, 2012, until January 7, 2015 (doc. 38-1 at 2). However, the affidavit cited by the defendants does not contain any dates for the plaintiff's incarceration (*see* doc. 38-2, Barfield aff.).

2

In his declaration submitted in support of his motion for summary judgment, the plaintiff states that he suffers from essential thrombocythemia (bone marrow cancer), hypercholesterol, acid reflux, gout, and high blood pressure (doc. 69-3, pl. decl.). He further states that he was prescribed numerous medications, including Anagrelide, Metaprolol, Lipitor, Loratidine, Pentoprozole, Allopurinol, Losartin, and Furosemide to treat his medical conditions (*id.*). He alleges that he was deprived of over 500 doses of medication by defendants Barfield, Samuels, McQueen, Cooper, McArthur, and "Crystal Todd"[2] (*id.*). The plaintiff further states in his declaration that on November 21, 2013, when he complained about the defendants' failure to give him his prescribed medication, defendants Barfield and Samuels retaliated against him by placing him in solitary confinement (doc. 69-3, pl. decl.). The plaintiff attached to his complaint a copy of pill logs he maintained during his confinement in the DCDC (doc. 1-4).

In her affidavit, defendant Brandie Barfield states that she is a licensed nurse and was employed by the DCSO to work as a nurse at the DCDC at all times relevant to this litigation (doc. 38-2, Barfield aff. ¶ 3). She states that during the plaintiff's stay in the DCDC he received all medications as prescribed by his doctors and that at no time was he denied access to medical care by herself or other DCDC staff (*id.* ¶¶ 6-7). She further states that all prescribed medications and refills given to the plaintiff had to be approved by the United States Marshals Service (*id.* ¶ 8). Nurse Barfield further states that, following SHP taking over medical care at the DCDC, all decisions made as to the plaintiff's medical care were by SHP (*id.* ¶ 10). The plaintiff's detainee file, including his medical records, is attached to the defendants' motion as an exhibit (*see* docs. 39 to 44). Included in the file are copies of the plaintiff's medication administration record for the time period both prior to and after SHP taking over medical care at the DCDC (*id.*).

---

[2] Presumably, this is the defendant identified as "Officer Crystal" on the docket.

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

While the court is charged with liberally construing a complaint filed by a *pro se* litigant to allow for the development of a potentially meritorious case, *see Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor

can the court assume the existence of a genuine issue of material fact where none exists. *Weller v. Dep't of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990).

***Defendant Dillon County***

The defendants argue that defendant Dillon County is not a proper party as it has no statutory authority or responsibility to supervise or control staff members or officers of the DCDC, which is operated and staffed by the DCSO (*see* doc. 38-4, Hulon aff. ¶¶ 5-11). In his response to the defendants' motion for summary judgment, the plaintiff specifically states he "has removed them as a defendant in this suit" (doc. 48 at 27), and, therefore, he apparently has no objection to Dillon County's request for dismissal (doc. 38-1 at 5). Accordingly, Dillon County should be dismissed as a defendant.[3]

***Eleventh Amendment Immunity***

The defendant employees of the DCSO are immune from suit in their official capacities under the Eleventh Amendment. *See Gulledge v. Smart*, 691 F. Supp. 947, 954 (D.S.C.1988), aff'd, 878 F.2d 379 (4th Cir. 1989) (finding the District Court correctly held that a South Carolina sheriff and his deputies are state actors immune from suit under the Eleventh Amendment). *See also Lockhart v. S. C. Dep't. of Corr.*, No. 2:13-cv-1345-MGL, 2013 WL 3864052, at *2 (D.S.C. July 24, 2013) ("Plaintiff's Complaint seeking monetary damages in this court pursuant to the S.C. Tort Claims Act is subject to summary dismissal based on the Eleventh Amendment's grant of sovereign immunity to the State of South Carolina and its integral parts."). Accordingly, the defendants' motion for summary judgment should be granted as to the claims against them in their official capacities.

***Exhaustion of Administrative Remedies***

The Prison Litigation Reform Act ("PLRA") states that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

---

[3] The defendants further argue that any claims against Dillon County and the DCSO should be dismissed as neither of those entities are persons subject to liability under Section 1983 (doc. 38-1 at 12). This argument will not be addressed as the plaintiff agrees to the dismissal of Dillon County and the DCSO is not a named defendant in this case.

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 84 (2006). However, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir.2008); *see also Stenhouse v. Hughes*, C.A. No. 9:04–cv–23150, 2006 WL 752876, at *2 (D.S.C. Mar. 21, 2006) ("[E]xhaustion may be achieved in situations where prison officials fail to timely advance the inmate's grievance or otherwise prevent him from seeking his administrative remedies.") (citation omitted). Accordingly, courts are "'obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials.'" *Hill v. O'Brien*, 387 F. App'x 396, 400 (4th Cir.2010) (per curiam) (quoting *Aquilar–Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir.2007)). "'[W]hen prison officials prevent inmates from using the administrative process, the process that exists on paper becomes unavailable in reality.'" *Id.* (quoting *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir.2006)). In *Hill*, the Fourth Circuit overturned a district court's holding that an inmate failed to exhaust administrative remedies, finding that there was a genuine issue of material fact as to whether the inmate exhausted his administrative remedies when the inmate alleged that prison officials refused to provide necessary forms, destroyed them, or failed to respond. *Id.* at 400–01. The defendants have the burden of establishing that a prisoner has failed to exhaust his administrative remedies. *Anderson v. XYZ Corr. Health Servs.*, 407 F.3d 674 (4th Cir.2005).

The defendants have presented evidence showing that the DCDC has an established grievance policy that requires grievances to be filed, and allows inmates to appeal any grievance. The defendants also provide evidence that the plaintiff did not file any grievances related to the allegations in his complaint (doc. 38-3, Samuels aff. ¶¶ 6-11 & ex. 1, DCDC Policy and Procedure Manual). In his complaint and response in opposition to the motion for summary judgment, the plaintiff contends that he attempted to file grievances, but the DCDC provided no grievance forms and no means (mailbox) to submit them (doc. 1 at 3; doc. 48 at 3, 17-18, 22-23). The plaintiff argues that he submitted a number of notes and letters written by himself and his attorneys to defendant Nurse Barfield

and former defendant Captain Sapp[4], and he asks that the court treat those notes and letters as grievances (doc. 48 at 3, 17-18, 22-23). The documents are attached as exhibits to his complaint (*see* docs. 1-1, 1-2, 1-3).

Viewing the evidence in a light most favorable to the plaintiff, the court is unable to conclude that the defendants have shown that there is no issue of material fact regarding the plaintiff's alleged failure to exhaust his administrative remedies. Accordingly, the undersigned recommends that the defendants' motion for summary judgment be denied on the exhaustion issue, and the undersigned will proceed to consideration of the merits of the plaintiff's claims.

***Deliberate Indifference to Serious Medical Needs***

Claims of pretrial detainees against detention center officials regarding conditions of confinement are evaluated under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment's proscription against cruel and unusual punishment. *See Bell v. Wolfish*, 441 U.S. 520, 535 & n.16 (1979); *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). "The due process rights of a pretrial detainee are at least as great as the eighth amendment protections available to the convicted prisoner; while the convicted prisoner is entitled to protection only against punishment that is 'cruel and unusual,' the pretrial detainee, who has yet to be adjudicated guilty of any crime, may not be subjected to any form of 'punishment.' " *Martin*, 849 F.2d at 870; *see also Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). Further, "the fact that [the] detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.' " *Bell*, 441 U.S. at 537.

---

[4] On August 17, 2016, the defendant voluntarily dismissed Captain Sapp as a defendant in this case, stating that Captain Sapp had died (doc. 17).

The United States Court of Appeals for the Fourth Circuit has held that the standard for determining whether detention center officials have violated a pretrial detainee's right to due process is deliberate indifference. *See Hill*, 979 F.2d at 991. Although these claims are analyzed under the Fourteenth Amendment, case law interpreting the standard of "deliberate indifference" under the Eighth Amendment is instructive. *See, e.g., Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001) (stating that whether the plaintiff is a pretrial detainee or a convicted prisoner, the "standard in either case is the same—that is, whether a government official has been 'deliberately indifferent to any [of his] serious medical needs' ") (quoting *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990)).

Generally, to establish a claim based on alleged deliberate indifference, an inmate must establish two requirements: (1) objectively, the deprivation suffered or injury inflicted was "sufficiently serious," and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.' " *Williams*, 77 F.3d at 761 (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). Objectively, the court must assess "whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

Here, the plaintiff has presented a declaration[5] stating that he was deprived of over 500 doses of his prescribed medications by defendants Barfield, Samuels, McQueen, Cooper, McArthur, and "Officer Crystal" Todd (doc. 69-3, pl. decl. ¶ 3). He further claims that each time he was denied his medication, he explained that he was suffering as a result (*id.*). The plaintiff has submitted pill logs and notes documenting dates on which he claims he did not receive his prescribed medication (docs. 1-1, 1-2, 1-3, 1-4). The plaintiff alleges that he complained on numerous occasions about his missed medication and that the defendants were aware of the importance of the medication in the treatment of his serious medical issues, including bone marrow cancer, hypercholesterol, acid reflux, gout, and high blood pressure. He claims that he suffered extreme headaches and "spells of blindness" as a result of missing his medication (doc. 1 at 14).

As noted above, the defendants submitted the affidavit of Nurse Barfield who states that the plaintiff received all medications as prescribed by his doctors and that at no time was he denied access to medical care by herself or other DCDC staff (doc. 38-2, Barfield aff. ¶¶ 6-7). The defendants have also submitted the plaintiff's medical records, which include the plaintiff's medication administration record (*see* docs. 39 to 44). In his response in opposition to the motion for summary judgment, the plaintiff points out discrepancies between the defendants' records and his own records (doc. 48 at 28-29, 32)

The plaintiff's allegations and evidence center around the alleged actions and inactions of defendant Nurse Barfield (*see* docs. 1, 48, 69-1). The other defendants named by the plaintiff in his declaration, Samuels, McQueen, Cooper, McArthur, and "Officer Crystal" Todd (doc. 69-3, pl. dec. ¶ 3), are non-medical employees who "were involved in dispensing medications to inmates" (doc. 48 at 12; *see* doc. 1 at 5 ("The nurse, Brandie

---

[5] The plaintiff affirms in his declaration, "I, Webster D. Williams, III, knowing the penalty of perjury, hereby swear that the foregoing is true and correct" (doc. 69-3). The declaration is signed by the plaintiff and dated (*id.*). Accordingly, the declaration qualifies as an alternative to an affidavit under 28 U.S.C. § 1746.

Barfield, does not always personally deliver medications to inmates. She sometimes (often) delegates this responsibility to various guards.")). "To establish a claim for denial of medical care against non-medical personnel, a prisoner must show that they failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct." *Vinson v. U.S. Marshals Serv.*, No. 0:10-cv-79-RMG-PJG, 2011 WL 3903057, at *8 (D.S.C. July 29, 2011) (citing *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990)), *report and recommendation adopted by* 2011 WL 3903199 (D.S.C. Sept. 2, 2011). Moreover, because most prison officials are not trained medical personnel, they are entitled to rely on the opinions, judgment, and expertise of medical personnel concerning the course of treatment which the medical personnel deemed necessary and appropriate for the prisoner. *See id.* The plaintiff has failed to present evidence sufficient for a reasonable jury to find that the non-medical personnel named in his declaration, defendants Samuels, McQueen, Cooper, McArthur, and Officer Crystal Todd, should be held liable on his claim for deliberate indifference to his serious medical needs.

Viewing the evidence in a light most favorable to the plaintiff, particularly the plaintiff's own contemporaneous handwritten notes and charts (docs. 1-1, 1-2, 1-3, 1-4), a reasonable jury could determine that defendant Barfield was deliberately indifferent to the plaintiff's serious medical needs by failing to provide him with his prescribed medications. The plaintiff has set forth genuine issues of material fact that preclude summary judgment on this cause of action as to defendant Barfield. Based upon the foregoing, summary judgment should be denied as to defendant Barfield, and summary judgment should be granted in favor of the remaining defendants on this cause of action.

*Retaliation*

In his declaration, the plaintiff states that, on November 21, 2013, he began to complain about the defendants' failure to give him his prescribed medication, and

defendants Barfield and Samuels retaliated against him by placing him in solitary confinement (a medical isolation cell) for two weeks (doc. 69-3, pl. dec. ¶ 4; doc. 48 at 6-7). He further states that these defendants "made clear to me that this was being done in retaliation for my having filed grievances and in an attempt to prevent me from further complaining about the DCDC conditions created by the defendants" (doc. 69-3, pl. dec. ¶ 4). The plaintiff alleges that "there was clearly no bona fide medical reason for placing me in solitary, it was very clear that it was a punitive measure because of my many complaints about my not receiving my medications" (doc. 1 at 4).

To state a *prima facie* claim of retaliation under Section 1983, an inmate must allege facts showing that his exercise of a constitutionally protected right was a substantial factor motivating the retaliatory action. *Booker v. Jenkins*, C.A. No. 2:09-1891-HMH-RSC, 2009 WL 2461254, at *3 (D.S.C. Aug. 11, 2009) (citing *Hughes v. Bedsole*, 48 F.3d 1376, 1386 n. 11 (4th Cir. 1995) (citing *Mt. Healthy City School Dist. Bd. of Education v. Doyle*, 429 U.S. 274, 287 (1977)); *Wagner v. Wheeler*, 13 F.3d 86, 90–91 (4th Cir.1993)). As the Court of Appeals for the Fourth Circuit recently found in *Booker v. S.C. Dep't of Corr.*, "an inmate's First Amendment right to be free from retaliation for filing a grievance [is] clearly established . . . ." 855 F.3d 533, 546 (4th Cir. 2017).

Here, the plaintiff has offered only his personal belief that defendants Barfield and Samuels placed him in the medical isolation cell in retaliation for his complaints regarding his medical care. He claims that there was "clearly" no other reason for placing him there, but the plaintiff's conclusory claim that he was retaliated against for complaining about his medical care, without any supporting facts or evidence, fails to state a claim of retaliation. *See Jeter v. Smith*, C.A. No. 9:11-1149-JFA-BM, 2012 WL 1570079, at *7 (D.S.C. Feb. 24, 2012), *report and recommendation adopted by* 2012 WL 1570076 (D.S.C. May 3, 2012) (citing *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir.1996) (per curium) (speculative and conclusory allegations cannot support retaliation claim); *LaCroix v.*

*Williams*, No. 97-0790, 2000 WL 1375737, at *4 (W.D.N.Y. Sept. 21, 2000) ("Plaintiff's conclusory allegations aside, there is simply nothing in the record to support his version of the facts and plaintiff's claim for retaliation fails."); *Woods v. Edwards*, 51 F.3d 577, 580-81 (5th Cir.1995) (summary judgment affirmed where inmate offered no evidence other than his personal belief that the alleged retaliatory actions were based on his exercise of his rights); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir.1995) (case dismissed where Plaintiff produced nothing beyond his own conclusory allegations suggesting that prison official's actions were motivated by a retaliatory animus)).

Based upon the foregoing, summary judgment should be granted in favor of the defendants on this cause of action.

***Additional Allegations***

In their motions for summary judgment, responses, and replies, the plaintiff and the defendants address only the two causes of action discussed above: 1) deliberate indifference to serious medical needs based upon the alleged failure of the defendants to provide the plaintiff with his prescribed medications, and 2) retaliation for the plaintiff's complaints about not receiving his prescription medications (*see* docs. 38, 48, 51, 69, 71, 73). However, within his 35-page complaint, the plaintiff makes the following additional allegations: he was given medication prescribed to other inmates (doc. 1 at 5); an outside dentist once gave him a prescription for an antibiotic to which he was allergic (*id.* at 5); he was denied medical treatment while he was "violently ill" on August 30, 2014 (*id.* at 6); an unknown deputy with the United States Marshals Service confiscated his medication on December 18, 2012 (*id.* at 7); when he left the DCDC, his prescription medication was not sent with him (*id.*); the DCDC provides no means for inmates to cut their hair and shave other than hair clippers donated by the inmates' families (*id.* at 8); the DCDC permits unsanitary conditions to exist in the bathrooms (*id.*); he was punished in January 2015 for having a Benadryl capsule that had been given to him by a nurse (*id.* at 9); on several

occasions, unnamed individuals would not permit the plaintiff to have a private conversation with his attorney (*id.* at 10); Nurse Barfield scheduled a doctor's appointment for the plaintiff at a time when she knew the plaintiff had an appointment to meet with his attorney (*id.*); the DCDC failed to provide a legal library (*id.* at 10-11); Nurse Barfield failed to instruct the DCDC kitchen to provide him a "diverticulosis diet" (*id.* at 17); defendant Cooper once placed him in "the hole" for smoking (*id.* at 18); defendant Best stole his personal property during a cell search for contraband (*id.*); and defendant Officer Tosha refused to follow the doctor-recommended diet (*id.*).

Many of these allegations are made against unknown individuals who are not defendants in this action or, with regard to any additional medical claims, are made regarding a time period after SHP took over medical operations at DCDC on July 15, 2014. Moreover, the allegations are vague and conclusory and fail to state a claim of constitutional magnitude. *See Jeter v. Smith*, C.A. No. 9:11-1149-JFA-BM, 2012 WL 1570079, at *6-7 (D.S.C. Feb. 24, 2012) (finding summary judgment should be granted on pretrial detainee's vague, conclusory allegations regarding conditions of confinement in county jail), *report and recommendation adopted by* 2012 WL 1570076 (D.S.C. May 3, 2012). Further, the plaintiff has failed to present any evidence in support of such allegations; in his declaration and statement of undisputed facts submitted in support of his motion for summary judgment (docs. 69-2, 69-3), the plaintiff does not address or provide support for these additional allegations. Accordingly, any claims for relief construed by the court to arise from these additional allegations should be dismissed.

13

## **CONCLUSION AND RECOMMENDATION**

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendants' motion for summary judgment (doc. 38) be granted in part and denied in part and the plaintiff's motion for summary judgment (doc. 69) be denied. The case should proceed only on the deliberate indifference to serious medical needs cause of action against defendant Barfield in her individual capacity. All other defendants and claims should be dismissed from the case as discussed herein.

IT IS SO RECOMMENDED.

s/Kevin F. McDonald
United States Magistrate Judge

July 31, 2017
Greenville, South Carolina