# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | | |
|---|---|---|
| Webster D. Williams, III, | ) | Case No 6:16-cv-1236-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Dillon County, Lieutenant Pam, | ) | |
| Sammy Samuels, Brandie Barfield, | ) | |
| Officer Tosha, Officer Best, | ) | |
| Officer Cooper, Officer Wendy, | ) | |
| Officer Crystal, Sergeant McQueen, | ) | |
| Officer Hodges, Terry McArthur, | ) | |
| Ms Greer, Ms Barfield, Officer | ) | |
| Godboldt, Officer Abraham, | ) | |
| Various other employees of Dillon | ) | |
| County, John Doe, and Richard Roe, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on the Report and Recommendation ("R. & R.") of the Magistrate Judge (Dkt. No. 86), recommending that Defendants' motion for summary judgment (Dkt. No. 38) be granted in part and denied in part and Plaintiff's motion for summary judgment (Dkt. No. 69) be denied. For the reasons set forth below, this Court adopts portions of the R. & R. as the order of the Court. Defendants' motion for summary judgment is granted as to all claims except for Plaintiff's deliberate indifference and retaliation claims against Defendant Barfield in her individual capacity.[1] Plaintiff's motion for summary judgment is denied.

---

[1] The Magistrate recommended that this Court deny Defendants' motion for summary judgment based on Plaintiff's failure to exhaust his administrative remedies. As discussed below, the Court has adopted the Magistrate's recommendation on the exhaustion issue and has considered each claim on its merits.

-1-

I. Background

Plaintiff is a federal prisoner proceeding *pro se*. He was detained at the Dillon County Detention Center ("DCDC") from December 18, 2012 until February 15, 2015 while awaiting trial on federal charges. The DCDC is operated and staffed by the Dillon County Sheriff's Office ("DCSO"). The DCDC was responsible for rendering medical care to Plaintiff from his intake on December 18, 2012 until July 15, 2014. From July 15, 2014 onward, the DCDC contracted with Southern Health Partners ("SHP") to provide medical care for detainees at the DCDC. (Dkt. No. 86 at 2.)

Plaintiff filed the instant complaint on April 20, 2016, alleging under 42 U.S.C. § 1983 that Defendants were deliberately indifferent to his serious medical needs when they failed to provide him with his prescribed medication and retaliated against him for complaining about not receiving his medications. (Dkt. No. 1 at 2-4.) Specifically, Plaintiff alleges that he suffers from several medical conditions, including bone marrow cancer, gout, and high blood pressure, for which he is prescribed medication. He claims he was deprived of over 500 doses of medication by defendants Barfield, Samuels, McQueen, Cooper, McArthur, and Chrystal Todd. He claims that when he complained about not receiving his medications as prescribed, defendants Barfield and Samuels retaliated against him by placing him in medical isolation. To support his allegations, Plaintiff has submitted a declaration and a copy of the medication logs he maintained during his confinement at DCDC. (Dkt. No. 86 at 3.)

II. Legal Standards

a. *Pro Se* Pleadings

This Court liberally construes complaints filed by *pro se* litigants to allow the development of a potentially meritorious case. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v.*

*Kerner*, 404 U.S. 519 (1972). The requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a viable federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. *See Weller v. Dep't of Social Services*, 901 F.2d 387 (4th Cir. 1990).

### b. Magistrate's Report and Recommendation

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). In the absence of specific objections, "a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (internal quotation omitted).

### c. Summary Judgment

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue of any material fact such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, any admissions on file, together with the affidavits, if any, which show there is no genuine issue as to any material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court will construe all inferences and ambiguities in favor of the non-moving party. *See U.S. v. Diebold, Inc.*, 369 U.S. 654, 655

(1962). The existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, an issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. *Id.* at 257.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

### d. Deliberate Indifference to Serious Medical Needs

Claims of pretrial detainees against detention center officials regarding conditions of confinement are evaluated under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment's proscription against cruel and unusual punishment. *See Bell v. Wolfish*, 441 U.S. 520, 535 & n.16 (1979); *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). "The due process rights of a pretrial detainee are at least as great as the eighth amendment protections available to the convicted prisoner; while the convicted prisoner is entitled to protection only against punishment that is 'cruel and unusual,' the pretrial detainee, who has yet to be adjudicated guilty of any crime, may not be subjected to any form of 'punishment.'" *Martin*, 849 F.2d at 870; *see also Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). Further, "the fact that [the] detention interferes with the detainee's understandable desire to live as

comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'" *Bell*, 441 U.S. at 537.

The United States Court of Appeals for the Fourth Circuit has held that the standard for determining whether detention center officials have violated a pretrial detainee's right to due process is deliberate indifference. *See Hill*, 979 F.2d at 991. Although these claims are analyzed under the Fourteenth Amendment, case law interpreting the standard of "deliberate indifference" under the Eighth Amendment is instructive. *See, e.g., Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001) (stating that whether the plaintiff is a pretrial detainee or a convicted prisoner, the "standard in either case is the same—that is, whether a government official has been 'deliberately indifferent to any [of his] serious medical needs'") (quoting *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990)).

Generally, to establish a § 1983 claim based on alleged deliberate indifference, an inmate must establish two requirements: (1) objectively, that the deprivation suffered or injury inflicted was "sufficiently serious," and (2) subjectively, that the prison officials acted with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams*, 77 F.3d at 761 (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). Objectively, the court must assess "whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). Plaintiff need not show that he suffered an actual injury to have an actionable deliberate indifference claim; he must only show that defendant's action

exposed him to the substantial risk of serious harm. *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 210 (4th Cir. 2017).

### e. Retaliation

A First Amendment retaliation claim under § 1983 consists of three elements: (1) the plaintiff engaged in constitutionally protected First Amendment activity; (2) the defendant took an action that adversely affected that protected activity; and (3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 537 (4th Cir. 2017).

## III. Discussion

The Magistrate made the following findings and recommendations in the R. & R.:

(1) Defendant Dillon County is not a proper party to this suit and should be dismissed (Dkt. No. 86 at 5);

(2) Defendant employees of the DCSO are immune from liability in their official capacities under the Eleventh Amendment (Dkt. No. 86 at 5);

(3) Defendants' motion for summary judgment should be denied with respect to Plaintiff's exhaustion of administrative remedies (Dkt. No. 86 at 6-7);

(4) Plaintiff failed to present evidence sufficient for a reasonable jury to find that the non-medical employees named in Plaintiff's declaration (Samuels, McQueen, Cooper, McArthur, and Chrystal Todd) are liable for deliberate indifference to his medical needs (Dkt. No. 86 at 10);

(5) Plaintiff has presented sufficient to create a genuine issue of material fact about whether defendant Barfield was deliberately indifferent to Plaintiff's serious medical needs (Dkt. No. 86 at 9-10);

(6) Plaintiff's allegations that Defendants Barfield and Samuels retaliated against him cannot survive a motion for summary judgment because they are conclusory and based solely on his personal belief that he was placed in medical isolation in retaliation for his complaints about his medical care (Dkt. No. 86 at 11); and

(7) The additional allegations in Plaintiff's complaint, some of which are made against unknown individuals or individuals not named in this action, are vague and conclusory and fail to state a claim of constitutional magnitude (Dkt. No. 86 at 13).

Neither Plaintiff nor defendants have objected to the Magistrate's recommendations (1) and (3). The Court finds that the Magistrate correctly applied to the controlling law to the facts of the case with respect to these two issues. Defendant Dillon County is dismissed from this suit, and Defendants' motion for summary judgment is denied as to Plaintiff's exhaustion of administrative remedies.

Plaintiff and Defendants have filed objections to the Magistrate's other recommendations. (Dkt. Nos. 97, 99.) Defendants object to the Magistrate's determination ((number (5), above)) that Plaintiff has created a genuine dispute of material fact about whether Defendant Barfield was deliberately indifferent to his serious medical needs. Plaintiff objects to several of the Magistrate's findings, including (as numbered above): (2) that the DCSO employees are entitled to Eleventh Amendment immunity from suit in their official capacities; (4) that Plaintiff failed to allege facts sufficient for a reasonable jury to conclude that the non-medical defendants are liable for deliberate indifference to his serious medical needs; (6) that Plaintiff failed to state a retaliation claim against any defendant; and (7) that Plaintiff's other

allegations are vague and fail to state a claim of constitutional magnitude.[2] The Court has given *de novo* consideration to all issues identified in the parties' objections, as set forth below.

### a. Deliberate Indifference of Defendant Barfield

Plaintiff suffers from several medical ailments, including bone marrow cancer. One complication of this cancer is an increased blood platelet level. Too-high platelet levels can cause blood clots which, in turn, can lead to a heart attack or stroke. Plaintiff was prescribed Anagrelide to maintain a normal platelet level and mitigate the risk of blood clots. Plaintiff's prescription was specifically formulated based on his response to the medication: he was to alternate taking four pills one day and five pills the next.

Plaintiff claims that he was deprived of over 500 doses of his prescribed medications while confined at DCDC. He claims that a number of the missed doses included his fifth daily dose of Anagrelide. Plaintiff claims that Defendants failed over an extended period of time to provide him with the proper dose of Anagrelide despite his own and his attorney's notifying the nurse in charge of dispensing medication, Defendant Barfield, that he was not receiving the proper dose. (*See* Dkt. No. 44-5 at 7.)

Defendant Barfield claims in her affidavit that "At all times during Plaintiff's stay at DCDC he received all medications as prescribed by his doctors." (Dkt. No. 38-2 at 2.) Plaintiff has provided his own contemporaneous records showing that he missed doses. (Dkt. No. 1-4.) Defendants argue that Plaintiff has failed to create a genuine dispute of material fact about whether Defendant Barfield was deliberately indifferent to a serious medical need and that he has

---

[2] Many of Plaintiff's objections do not address findings made by the Magistrate, including, for example, his argument that Defendants are not entitled to qualified immunity. The Magistrate did not discuss qualified immunity.

instead provided evidence that "amounts to nothing more than, at worst case, mere negligence." (Dkt. No. 99 at 4.) The Court disagrees.

"Isolated incidents of missed medication and a medical emergency do not establish deliberate indifference." *Hilyer v. Dunn*, No. CV 15-00356-WS-N, 2016 WL 7093437, at *6 (S.D. Ala. Oct. 28, 2016), *report and recommendation adopted,* No. CV 15-00356-WS-N, 2016 WL 7045731 (S.D. Ala. Dec. 2, 2016). A failure to dispense medication exactly as prescribed may support a claim of negligence, but "it falls severely short of deliberate indifference." *Id.* at *7; *see also Zentmyer v. Kendall Cty., Ill.*, 220 F.3d 805, 811–12 (7th Cir. 2000) (evidence that jail guards occasionally failed to administer doses of medicine without knowledge that serious consequences might result from their lack of diligence in treating an earache not sufficient to show deliberate indifference); *Mahan v. Plymouth County House of Corrections*, 64 F.3d 14, 18 (1st Cir.1995) (failure to administer prescription medication did not constitute deliberate indifference absent evidence that prison officials knew the plaintiff would suffer serious medical consequences without medication); *Woolford v. McDonald*, 61 F. Supp. 3d 454, 460 (D. Del. 2014) (granting summary judgment for defendants when "consistent with the realities of an institutional setting, there [may have been] periodic delays (as alleged, no more than a day or two) between refills of a medication, but such medication [was] otherwise provided on a daily basis as required").

On the other end of the spectrum, a plaintiff's allegation that a defendant knowingly failed to provide him with any of his prescribed medication may be sufficient to state a claim for deliberate indifference. *See, e.g., Collins v. Phillips*, No. 4:06-CV-4104, 2008 WL 4148256, at *8 (W. D. Ark. Sept. 8, 2008). The question the Court grapples with here is whether Plaintiff's allegation that Defendant Barfield failed to dispense his medication as prescribed,

causing him to miss many doses over an extended period of time, is sufficient to state a claim for deliberate indifference. Construing the facts in a light most favorable to Plaintiff, a reasonable jury could find that Defendant Barfield's failure to dispense Plaintiff's medication as prescribed (including Anagrelide and other medications that were prescribed to be taken with that drug) exposed him to the substantial risk of harm, including blood clots. If true, the facts Plaintiff has alleged may also show that Nurse Barfield's failure to provide the medication as prescribed was not the result of normal institutional challenges (which could understandable cause the occasional late delivery of medications), negligence, or inadvertent failure to provide care. Plaintiff has alleged that Defendant Barfield was aware that Plaintiff was not receiving his medication as prescribed for an extended period of time and failed to take steps to address the issue. A reasonable juror could conclude that Defendant Barfield's conduct exposed Plaintiff to risks that were unacceptable and outside the bounds of society's standards of decency. Plaintiff has created a genuine issue of material fact about whether Defendant Barfield was deliberately indifferent to Plaintiff's serious medical needs.

### b. Deliberate Indifference of Non-medical Employees

The Magistrate explained that, "to establish a claim for denial of medical care against non-medical personnel, a prisoner must show that they failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct." *Vinson v. U.S. Marshals Serv.*, No. 0:10-cv-79-RMG-PJG, 2011 WL 3903057, at *8 (D.S.C. July 29, 2011) (citing *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990)), *report and recommendation adopted by* 2011 WL 3903199 (D.S.C. Sept. 2, 2011). Because most prison officials are not trained medical personnel, they are entitled to rely on the opinions, judgment, and expertise of medical personnel concerning the

course of treatment which the medical personnel deemed necessary and appropriate for the prisoner. *See id.* Plaintiff alleges that Defendant Barfield often delegated the responsibility to dispense medications to the non-medical defendants. Instead, the record shows that Nurse Barfield actually dispensed the medication (i.e. prepared the doses), which non-medical personnel would deliver to inmates in her absence. Defendant Barfield also maintained Plaintiff's medication records, as shown by her initials throughout those records. The non-medical personnel did not have the authority to dispense additional medication or the expertise to independently determine – based on Plaintiff's own statements – that Plaintiff was not receiving the correct dose. The non-medical personnel were entitled to rely on the judgment of Defendant Barfield, and Plaintiff has not alleged facts sufficient to show that they were deliberately indifferent to his medical needs. Plaintiff's allegations that the other defendants conspired with or aided and abetted Nurse Barfield are conclusory. Defendants are entitled to summary judgment on these claims.

### c. Retaliation by Defendants Barfield and Samuels

Plaintiff has also alleged, and defendants have not denied, that he was held in a medical isolation cell at the back of the nurse's station for two weeks from November-December 2013 in retaliation for filing grievances about his medical care. (Dkt. No. 1 at 3-4.) A First Amendment retaliation claim under § 1983 consists of three elements: (1) the plaintiff engaged in constitutionally protected First Amendment activity; (2) the defendant took an action that adversely affected that protected activity; and (3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 537 (4th Cir. 2017). The Magistrate found that all Defendants were entitled to summary judgment on Plaintiff's retaliation claim because his allegations were conclusory. The Court

finds Plaintiff's retaliation claim against Defendant Barfield is sufficient to survive a motion for summary judgment so declines to adopt the R. & R. with respect to this issue.

For the first element of a retaliation claim, Plaintiff has alleged that he filed grievances about his missed medications both personally and through his attorney. His attorney's letter is in the record. (Dkt. No. 44-5 at 7.) He claims he was not provided access to the DCDC's formal grievance forms or processes. For this reason, the Magistrate determined that there was a genuine dispute of material fact about whether Plaintiff exhausted his administrative remedies. Defendants did not object to this determination, and the Court concludes that there is likewise a genuine dispute of material fact about whether Plaintiff exhausted his administrative remedies with respect to his retaliation claim. Defendants also argue that Plaintiff has failed to state a claim for retaliation because he has no constitutionally protected right to a grievance procedure. (Dkt. No. 71 at 8-9.) In the Fourth Circuit, an inmate's First Amendment right to file a prison grievance without retaliation has been clearly established since 2010. *Martin v. Duffy*, 858 F.3d 239, 251 (4th Cir. 2017). Plaintiff has therefore satisfied the first element of a retaliation claim.

For the second element, Plaintiff has alleged that Defendants Barfield and Samuels placed him in a medical isolation cell at the back of the nurse's station in retaliation for his complaints about his medical treatment. Defendants have not denied that Plaintiff was placed in medical isolation for two weeks from November to December 2013. Plaintiff has therefore established that an action was taken which chilled his First Amendment rights because it made him fear retaliation for filing grievances. *See Latson v. Clarke*, No. 1:16CV00039, 2017 WL 1407570, at *18 (W.D. Va. Apr. 20, 2017) (Plaintiff may establish that retaliatory action adversely affected his First Amendment rights by showing that a similarly situated person of ordinary firmness would feel the exercise of his rights "chill[ed]" by the Government's conduct).

The third element of a retaliation claim, whether Plaintiff has sufficiently alleged a causal relationship between his protected activity (filing grievances) and his placement in medical isolation is a closer question. Plaintiff has alleged only that he was placed in medical isolation sometime in the weeks or months following his most recent attempts to file grievances. Although temporal proximity alone has been regarded as "too slender a reed" to a support the causation element of a § 1983 retaliation claim, *Huggins v. Braxton*, No. 7:11-CV-00017, 2011 WL 322831, at *3 (W.D. Va. Jan. 31, 2011), the Fourth Circuit has determined that tempopral proximity may be sufficient to make an initial prima facie showing of causation, *see Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 579 (4th Cir. 2015).

While "timing alone generally cannot defeat summary judgment once a defendant offers a convincing, nonretaliatory explanation," *Muhammad v. Taylor*, No. 7:16-CV-00500, 2017 WL 3273651, at *15 (W.D. Va. Aug. 1, 2017), Plaintiff has alleged other facts that could support a causal connection between his filing grievances and being placed in medical isolation. For example, Plaintiff has alleged a causal connection between his complaints about the medical care he received from Defendant Barfield and Defendant Barfield's allegedly adverse action in this case – isolating him in a cell at the back of the nurse's station. Further, although the Court would expect a two week period of time spent in medical isolation to be supported by some institutional record, Defendants have not offered to the Court any non-retaliatory explanation for Plaintiff's medical isolation.

For the reasons stated above, the Court finds Plaintiff has created a genuine dispute of material fact about whether Defendant Barfield retaliated against him for filing grievances about his medical care. The Court agrees with the Magistrate's recommendation with respect to Plaintiff's retaliation claim against Defendant Samuels (and any other Defendant Plaintiff

intended to include), as Plaintiff's allegations against these Defendants are conclusory and without merit.

### d. Eleventh Amendment Immunity

Plaintiff objects to the Magistrate's determination that defendant employees of the DCSO are immune from suit in their official capacities under the Eleventh Amendment. He argues that Defendants were acting outside of their official capacities when they punished him by placing him in isolation. (Dkt. No. 97 at 12.) The Magistrate determined that defendants were entitled to Eleventh Amendment immunity only to the extent they were being sued in their official capacities (Dkt. No. 86 at 5), so Plaintiff's argument that they were not acting within the scope of their official capacities is not relevant to this issue. The Magistrate determined that the non-medical employees were entitled to summary judgment for other reasons, discussed above, and that Defendant Barfield was not entitled to summary judgment on Plaintiff's deliberate indifference claim against her in her individual capacity.

### e. Additional Allegations

The parties focused their summary judgment briefings only on Plaintiff's deliberate indifference and retaliation claims. The Magistrate considered Plaintiff's various other allegations (for example, that Nurse Barfield once scheduled a doctor's appointment for plaintiff when she knew he had an appointment to meet with his attorney or that he was once punished for having a Benadryl capsule in his quarters that had been given to him by a nurse) and determined that they are vague and conclusory and fail to state a claim of constitutional magnitude. Plaintiff mentions several of these allegations again in his objections to the R. & R., indicating at one point that he mentioned one incident only "to show the propensity of the officers at DCDC to punish inmates for the slightest infraction." (Dkt. No. 97 at 3.) Although Plaintiff has strewn

these additional, unrelated allegations throughout his objections, he has not created any genuine dispute of material fact to submit to a jury with regard to any one of them. These allegations are conclusory and without merit.

## IV. Conclusion

For the reasons above, this Court adopts the R. & R. as the order of the Court with regard to all issues except for Plaintiff's retaliation claim. Defendants' motion for summary judgment is granted in part and denied in part. (Dkt. No. 38.) Plaintiff's allegations against Defendant Barfield for deliberate indifference and retaliation are sufficient to survive summary judgment. (Dkt. No. 86 at 12-13.) Defendant Dillon County is dismissed because it is not a proper party to this suit. Defendants' motion for summary judgment is granted as to all other claims.

Also for the reasons discussed above, Plaintiff's motion for summary judgment is denied. (Dkt. No. 69.) The record reveals a genuine dispute of material fact about Plaintiff's deliberate indifference and retaliation claims against Defendant Barfield that must be submitted to a fact-finder.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

September 15, 2017
Charleston, South Carolina